334 P.2d 559

Theodore M. PETERSON, Administrator of the Estate of Dora Mabel Alsop Stringer, Deceased, Plaintiff and Respondent,

v.

Lucy A. HOLLOWAY, individually and as a Guardian or Trustee of the Estate of Dora Mabel Alsop, a minor, and Virginia Alsop House, Defendants and Appellants.

No. 8920.

Supreme Court of Utah.

Jan. 22, 1959.

Gustin, Richards & Mattsson, Salt Lake City, John W. Hunt, St. George, for appellants.

Hafen & Nelson, St. George, for respondent.

CROCKETT, Chief Justice.

Defendants appeal from a judgment quieting title to certain property in plaintiff, administrator of the estate of Dora Alsop Stringer. It is their position that it was transferred to Dora's guardian for her minority only, or at most for life, and that the evidence does not support the court's finding that the entire beneficial interest vested in her.

Charles D. Alsop and his wife Mabel C. Alsop were killed in an explosion in St.

George, Utah on March 6, 1935, orphaning their three children, Virginia 17, James 19 and Dora 6. Lucy Holloway, the children's aunt, took the children to care for at her home in Lexington, Kentucky and was later appointed their guardian. James graduated from West Point, was married and thereafter died. Virginia also graduted from college, and now lives with her husband in California. She is the only child who survives.

Dora, the youngest, was a sickly child and required much special care, hospitalization and medical attention. Because of this burdensome expense, the two older children, on January 24, 1939, executed an assignment of their interest in their parents' estate to the aunt, Lucy Holloway, as guardian for Dora. This was filed in the Fifth District Court at St. George in the probate of the estate. Pursuant to a request of the court they also filed a joint affidavit purposed to clarify the assignment. Based upon those documents the court on March 2, 1939, entered a decree distributing "all of the property of said estate," which included the property in question to "Lucy Holloway as guardian of the person and estate of Dora Alsop."

As guardian Lucy did not attempt to deal with the property in any way except to use the income therefrom for Dora's benefit. On February 24, 1947, Dora turned 18 and shortly thereafter she indicated her plan to marry John O. Stringer, which in view of her delicate state of health, came as a surprise, even a "shock," as her Aunt Lucy termed it, to her family. They, nevertheless, graciously acquiesced and wished the couple happiness when they married in May of that year. Dora died less than one month later. John O. Stringer is now her sole heir and the beneficiary of this judgment.

The critical issue raised was whether the entire interest in the property vested in Dora, or whether it was conveyed to her guardian only for the purpose of providing her support during her dependency and minority, or at most for her lifetime, and thereafter reverted back to the three children as heirs of their parents, one-third to each. It is to be observed that in view of the original purpose of the assignment to help their younger sister, which purpose was accomplished, and the fact that under the judgment the property will pass out of the family to Dora's husband who was married to her for less than a month, the equities of the defendants' position have strong appeal.

■■ Since the trial court found that the full beneficial interest in the property vested in Dora, in order to prevail on this appeal it would be necessary for the defendants to demonstrate that the evidence makes imperative a finding in accordance with their contention. The attack made upon the decree is an invocation of the equitable powers of the court, in which

case it is the prerogative of this court to review the evidence. Nevertheless it is our declared policy to indulge considerable latitude to the determination made by the trial court, and not to disturb his judgment unless the evidence clearly preponderates against it.[1]

We note aside that much of defendants' testimony about the conduct and intent of the parties in making the assignment and clarifying affidavit was admitted over objection that it was hearsay; and also in violation of the parol evidence rule against permitting oral testimony to vary or contradict written instruments. We are aware that there is some division in the authorities as to whether the language used in the documents might be subject to explanation of the nature proffered.[2] However, because of our determination of the more basic issues sustaining the plaintiff's position in spite of such evidence, the propriety of the trial court's admitting it is of no concern.

Defendants' witnesses, Lucy Holloway and Virginia Alsop (House), testified to facts which tend to show that the intention of Virginia and James in making the assignment was to make the use of the income available for Dora's assistance only and not to divest themselves of their interest in the property ultimately. In support of this proposition are letters between the parties written long before this controversy arose. Prior to Dora's marriage to John Stringer in 1947, in reply to a letter from Dora, Mrs. Holloway stated thus:

"Now the situation is this, in '39, when Jim and Virginia graduated from college they agreed with me that they would not break up the estate but would leave it intact so that you would have sufficient money to pay your expenses until you could reach the same level in life as they did.'

In a subsequent letter to Mrs. Holloway Dora stated:

"John and I have agreed to pay Virginia $5,000 and no more for her share, as she puts it, and that is more than fair, I think."

Defendants argue the importance of these letters, particularly Dora's because she is plaintiff's predecessor in interest and her admission is binding upon him. They couple with this argument the unlikelihood that they would divest themselves completely of their interest in the property without any benefit to themselves or to their aunt, contending that viewed in its proper perspective the entire picture is so

1. See MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066.

2. See dicta in Corey v. Roberts, 82 Utah 445, 25 P.2d 940, which inferentially support defendants and general statements in 20 Am.Jur., Evidence, § 1102, pp. 964, 965, supporting plaintiff.

clear and persuasive that the property was conveyed only for the limited purpose of protecting Dora during her minority or dependency that reasonable minds could not find otherwise. They further contend that the wording "For the use and benefit of Dora Alsop" is consistent with their position that it was for her temporary succor and not intended to divest themselves of their interest in the property ultimately. Consequently they urge that this language is subject to explanation, and that all of the evidence in the record is in support of their position.

█ It is true that the plaintiff was necessarily obliged to rely upon the documents. But assuming they were subject to explanation, it must also be kept in mind that the trial court could consider all of the background and attendant circumstances: the relationship of the parties, the situation in the family, and the purpose for which the assignment was executed. A further significant fact, which it could, and undoubtedly did, consider is what the parties did *not* do in connection with the transaction. When the assignment was executed they were mature adults and had the advice of counsel both as to the assignment and the affidavit. They were drawn in legal language of conveyance and neither contain any expression referring to any limitation on the conveyance or reversion to the assignors. Further, the language used seems appropriate to the purpose of making an absolute conveyance to the minor and thus provides a basis for finding that such was the intent of the parties.

█ · It may well be that this court would have been otherwise impressed both with the evidence and the equities of the situation. However we allow some deference to the advantaged position of the trial court in making determinations of fact.[3] It is to be realized that there is a plainly apparent interest in the cause existing in Virginia and, less directly, in Lucy Holloway. Although we see nothing inherently unreasonable or incredible about their testimony, such interest is one of the factors which the court may consider in gauging the credit it will give to witnesses and the findings it makes thereon.

Affirmed. Costs to respondents.

WADE, HENRIOD and McDONOUGH, JJ., concur.

WORTHEN, J., concurs in the result.

3. Nokes v. Continental Mine & Milling Co., 6 Utah 2d 177, 308 P.2d 954, and see VII Wigmore, Evidence, § 2034, (3d Ed. 1940).